Russell CARROLL, Petitioner,

v.

Robert HOKE, Superintendent, Eastern Correctional Facility; Robert Abrams, Attorney General State of New York; John Santucci, District Attorney, County of Queens, Respondents.

No. 88 CV 1811.

United States District Court, E.D. New York.

Sept. 13, 1989.

Louis M. Freeman, Freeman, Nooter & Ginsberg, New York City, for petitioner.

Michael O'Brien, Asst. Dist. Atty., John J. Santucci, Dist. Atty., County of Queens, for respondents.

MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition is denied.

## FACTS

Petitioner and four codefendants were convicted, following a jury trial, of felony murder, sixteen counts of robbery in the first degree and four counts of criminal possession of a weapon in the second degree. On January 7, 1982, petitioner was sentenced to concurrent terms of twenty-five years-to-life imprisonment on the murder count; ten-to-twenty years imprisonment on the robbery counts and six-to-twelve years imprisonment on the illegal weapon counts.

The facts that form the basis of these convictions stem from the April 10, 1980 gunpoint robbery of the patrons at Bell Hall's social club in Far Rockaway, Queens, and the murder of New York City Police Officer Bobby Sorrentino while he was attempting to apprehend petitioner and the other gunmen.

On November 18, 1985, the Appellate Division, Second Department unanimously affirmed the judgments of conviction. *People v. Avent, et al.,* 114 A.D.2d 963, 495 N.Y.S.2d 228 (2d Dep't 1985). Leave to appeal to the New York Court of Appeals was denied on March 26, 1986. On appeal, petitioner argued that (1) the trial court's charge deprived him of due process; (2) the prosecutor's summation deprived him of a fair trial; (3) the admission at trial of the testimony of Detective Philip Brannigan deprived him of due process; and (4) that since the case against him was not one of overwhelming guilt, the errors committed at trial were not harmless.

In June 1988, this habeas corpus petition was filed along with a request for appointment of counsel. In the June 1988 petition, petitioner raises the same issues urged on appeal. In May 1989, assigned counsel submitted a memorandum of law in support of the June 1988 petition. Respondents now oppose on the ground that the petition fails to raise federal constitutional claims.

## DISCUSSION

### I. THE JURY CHARGE

Before a federal court may overturn a conviction resulting from a state trial ...

it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

*Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). *See United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir.1974), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975).

In assessing whether a jury charge violates a state prisoner's federal constitutional rights, instructions on individual points of law must be viewed in the context of the entire charge. *See Cupp, supra,* 414 U.S. at 147, 94 S.Ct. at 400; *Mullings v. Meachum,* 864 F.2d 13, 16 (2d Cir.1988).

The specific alleged errors in the jury charge of which petitioner complains include: (1) the trial court's refusal to charge felony assault as a lesser included crime of felony murder; (2) the trial court's refusal to give a missing witness charge; (3) the trial court's comment on the lack of necessity to call all witnesses; and (4) the trial court's instruction on petitioner's failure to testify. Petitioner also claims that the charge was prejudicial because it removed the jury's fact finding function with regard to the actual cause of the victim's death and the issue of flight.

After a thorough review of the record, the Court concludes that except for the three challenges discussed below, petitioner's remaining arguments about the jury charge are either unsupported, constitute harmless error or fail to present a constitutional question.

### A. *The Lesser Included Offense Instruction*

■ Neither the Supreme Court nor the Second Circuit has squarely addressed the issue whether a state court's erroneous failure to instruct on a lesser included offense presents a federal constitutional question in a non-capital case. *See Beck v. Alabama,* 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 2390 n. 14, 65 L.Ed.2d 392 (1980);

*Rice v. Hoke,* 846 F.2d 160, 164 (2d Cir. 1988) (noting the division of authority among the Circuit Courts of Appeals but declining to reach the issue). Upon a review of the trial court record, however, the Court concludes a lesser included charge would have been inappropriate, and thus does not reach the question whether such an error amounts to a deprivation of due process.

An instruction on a lesser included offense must be given to the jury where "(1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense." *Rice v. Hoke, supra,* 846 F.2d at 165 (citing *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *People v. Glover,* 57 N.Y.2d 61, 63, 439 N.E.2d 376, 377, 453 N.Y.S.2d 660, 661 (1982) (per curiam); *People v. Green,* 56 N.Y.2d 427, 430, 437 N.E.2d 1146, 1147–48, 452 N.Y.S.2d 389, 391 (1982); N.Y.Crim.P.Law § 300.50(1) (McKinney 1982)).

The inquiry here focuses on the second factor, whether a reasonable view of the evidence warrants a "lesser included" instruction. Petitioner claims that the evidence supports a view that Officer Sorrentino died of intervening negligence on the part of his treating physicians, and not directly as a result of the gunshot wounds he sustained.

Officer Sorrentino was shot at approximately 9:45 p.m. on April 10, 1980. The officers who came to his immediate assistance noted the blood stains and bullet holes on his jacket in the area around his stomach. Shortly after 10:00 p.m. Officer Sorrentino underwent a fourteen hour operation. Half of his stomach, his entire duodenum, and parts of pancreas, jejunum, traverse colon, right kidney and right urethea were removed. Officer Sorrentino never regained consciousness after the operation and died fourteen days later.

An autopsy disclosed that the officer was afflicted with peritonitis in the abdominal cavity and an infection in each organ. The medical examiner concluded that the cause of death was gunshot wounds leading to an infection and shock.

Petitioner claims that the testimony of the physicians on cross-examination reasonably supports a conclusion that petitioner is guilty of only felony assault and that malpractice was the cause of death. Specifically, the physicians testified that Officer Sorrentino was given Atropine, but could not explain why the medication was indicated. The medical conclusion that the officer died of an infection, petitioner asserts, was contradicted by the medical records, which note that Officer Sorrentino maintained a normal post-operative body temperature.

This evidence fails to support a reasonable view that petitioner had committed only felony assault.

It is well-established in New York that the intervening negligence of a doctor will generally not constitute a superseding cause of death relieving a defendant of criminal responsibility. *See People v. Eulo,* 63 N.Y.2d 341, 359, 482 N.Y.S.2d 436, 447, 472 N.E.2d 286, 297 (1984); *People v. Stewart,* 40 N.Y.2d 692, 697–98, 389 N.Y. S.2d 804, 808, 358 N.E.2d 487, 491 (1976); *People v. Kane,* 213 N.Y. 260, 270, 107 N.E. 655, 659 (1915). Only when the intervening negligence is a "grave deviation from accepted medical practices," *Eulo, supra,* 63 N.Y.2d at 359, 482 N.Y.S.2d at 447, 472 N.E.2d at 297, such that "the death is solely attributable to the secondary agency, and not at all induced by the primary one," *Kane, supra,* 213 N.Y. at 270, 107 N.E. at 659, is the chain of causation broken.

The evidence adduced at trial failed to present an issue of negligence, much less gross negligence. Other than the fact that Atropine was administered on the day Officer Sorrentino died, there was no evidence that the administration of the drug was negligent. Nor can the Court conclude that the absence of a high body temperature coupled with a final diagnosis that the officer died of an infection support a finding of negligence—particularly when there was evidence that Officer Sorrentino was given antibiotics to control the infection.

Based on the foregoing, the Court concludes that petitioner has failed to demonstrate that "a reasonable view of the evidence supports a finding that [he committed] the lesser, but not the greater, offense." *Rice v. Hoke, supra,* 846 F.2d at 165. Accordingly, the trial court did not err in refusing to instruct the jury on the lesser included offense of felony assault.

### B. The Trial Court's Comment On Petitioner's Silence

Although one of the codefendants testified on his own behalf, petitioner exercised his fifth amendment right and did not take the stand. The record is silent on the precise language of the jury instruction requested by trial counsel regarding petitioner's silence. There is, however, no dispute that petitioner's trial counsel requested a standard "no inference" charge. *See* N.Y.Crim.P.L. § 300.10(2). In his charge, the trial judge instructed the jurors as follows:

The fact that these Defendants did not take the stand in their own defense *may or may not* be considered by you as any admission of their guilt or as any evidence directly or indirectly raising an inference that they are guilty because as I have explained to you under the law every Defendant is presumed to be innocent. Defendants['] failure to testify does not create any presumption against him [sic].

Tr. at 1317 (emphasis added).

No objection to this language was lodged by petitioner's trial counsel.

#### 1. Procedural Default

■ Respondents vigorously assert that defense counsel's failure to object to the charge as given precludes federal review of the merits of this claim. Although the issue was raised on appeal, and the State

argued, albeit in a footnote, *see* People's Brief at 52, that the petitioner had waived his claim, the Second Department failed to explicitly rely on the procedural default. After addressing arguments not relevant to this petition, the court merely stated:

With respect to the other contentions of legal error raised by all of the defendants which have been preserved for our review, we find that they do not warrant reversal of the instant convictions.... As to those contentions not preserved for our review, we decline to exercise our interest of justice jurisdiction.

*People v. Avent, supra,* 114 A.D.2d at 964, 495 N.Y.S.2d at 229 (citation omitted).

In *Harris v. Reed,* —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Supreme Court held that only clear and unambiguous reliance on procedural default grounds by the "last state court rendering judgment in the case" will preclude federal collateral review of a state conviction. *Id.* at ——, 109 S.Ct. at 1043. The Second Department's opinion is neither clear nor unambiguous. Although the court concluded that some of the issues were not preserved for appeal, it failed to delineate which issues fell into that category. Accordingly, the Court must reach the merits of this claim.[1]

#### 2. The Merits

■ *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), teaches that the fifth amendment privilege against self incrimination requires an instruction that no adverse inference be drawn from the defendant's failure to testify when a proper request is made by defense counsel. *Id.* at 300, 101 S.Ct. at 1119. Whether a judge's refusal to give the requested instruction is amenable to a harmless error analysis, however, is a question that has eluded both the Supreme

1. The Court questions whether there was a "fair presentation" of petitioner's claims in the state courts within the meaning of *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam). No argument is made by respondents that petitioner has failed to exhaust state remedies. The Court is nevertheless convinced that the petition

lacks merit. Accordingly, in the exercise of its discretion, the Court concludes that "the administration of justice would be better served ... by reaching the merits of the petition forthwith." *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987). *See Davis v. Lansing,* 851 F.2d 72, 76 (2d Cir.1988); *Plunkett v. Johnson,* 828 F.2d 954, 956 (2d Cir.1987).

Court and the Second Circuit. *See id.* at 304, 101 S.Ct. at 1121; *James v. Kentucky,* 466 U.S. 341, 351, 104 S.Ct. 1830, 1836, 80 L.Ed.2d 346 (1984).

There is nevertheless unanimity among the circuits which have addressed the issue directly that a *Carter* error can be harmless. *See Finney v. Rothgerber,* 751 F.2d 858, 863 (6th Cir.), *cert. denied,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 310 (1985); *Richardson v. Lucas,* 741 F.2d 753, 755 (5th Cir.1984). Drawing from the principles laid down in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), these courts have concluded that before the *Carter* error can be deemed harmless, " 'the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' " *Finney, supra,* 751 F.2d at 864 (quoting *Chapman, supra,* 386 U.S. at 24, 87 S.Ct. at 828); *see Richardson, supra,* 741 F.2d at 755.

Although the trial judge did not refuse to give the requested instruction, the Court assumes for purposes of this discussion that the charge given constitutes an error within the meaning of *Carter.* Upon a thorough review of the record of the state court proceedings, however, the Court is also convinced beyond a reasonable doubt that petitioner is guilty of crimes for which he is now incarcerated.

Two of the victims of the robbery testified at trial. These victims told the jury that they were in Bell Hall's social club on April 10, 1980. At approximately 9:20 p.m., two of petitioner's co-defendants, Robert Avent and Marcel Marable, entered the club. The doorbell to the club rang moments later. Avent opened the door. Petitioner and co-defendant Brother Leroy Williams entered. Each of the perpetrators then pulled out weapons—petitioner had a shotgun. They ordered the patrons of the club to strip, and then proceeded to rob them at gunpoint. Both robbery victims identified petitioner.

Two nieces of the owner of the club also testified. They saw a car pull-up to the club while they were sitting outside the house next-door to the club. They later heard a scream, ran over to the club and knocked on the door. When the door opened, they were pulled inside and ordered to lie on the floor. One of the robbers put a gun to their heads.

While the robbery was in progress, the last co-defendant, Danny Swinson, sounded a car horn twice after which he appeared in the foyer of the club. The robbers then fled in a car.

Police Officer Jack Dowd also testified at trial. At approximately 9:45 p.m., Officer Dowd and his partner, Officer Sorrentino were on patrol when they were approached by Dickie Hall and Julien Felder, also robbery victims, in "a civilian auto." After a brief conversation, Officer Sorrentino spotted the car that the victims described and put on the patrol car's siren and flashers. A chase ensued for approximately ten to twelve blocks. Officer Dowd observed four men leave the car and run away. Officer Dowd was in the process of following a man, who he later identified as petitioner, when he heard three gun shots. He immediately transmitted this information on his walkie-talkie. With the assistance of Hall and Felder, Avent was caught. Marable was found at about 10:00 p.m. hiding in an alcove near the scene of the shooting and was placed under arrest.

Another witness who observed the police chase testified that he approached the abandoned getaway car and found a plastic pouch containing money in the rear seat, which he turned over to the police. The two officers who came to the assistance of Officer Sorrentino also testified. Another trial witness, who lived near the chase route, testified that he found a watch on his property and turned it over to the police. The watch was identified by one of the victims as one of the items stolen from him at the club.

A series of forensics experts also testified at trial about the physical evidence found at or near the scene of the shooting and obtained from the getaway car. Jewelry and wallets that were recovered were identified by the robbery victims. Petitioner's fingerprints were found in the getaway car.

Post-arrest statements by Avent and Marable were taken by the police. The codefendants identified petitioner as part of the group. Petitioner surrendered himself to a CBS television newscaster eight days later.[2]

Based on the foregoing, the Court concludes that the evidence amply establishes petitioner's guilt beyond a reasonable doubt. This conclusion convinces the Court that it was the overwhelming evidence of guilt adduced at trial that resulted in the jury's verdict, and not petitioner's silence or the trial judge's ambiguous comment thereon in the charge. There is, moreover, substantial evidence suggesting that the trial judge's comment ("may *or may not* be considered by you") was inadvertent. The trial minutes and the jury instructions are replete with admonitions that petitioner is presumed innocent, *see, e.g.,* Tr. at 1310, that he has no obligation to produce evidence or prove his innocence, *see, e.g.,* Tr. at 1309, and that petitioner's failure to testify "does not create any presumption against him." *See, e.g.,* Tr. at 1317.

Accordingly, the Court finds that if the judge erred within the meaning of *Carter v. Kentucky,* the error was harmless and cannot form the basis of a writ of habeas corpus.

### C. *The Missing Witness Charge*

■ Petitioner also claims that he was deprived of due process because the trial court refused his request to give a missing witness charge. This argument dovetails with petitioner's contention that the testimony of Detective Philip Brannigan deprived him of due process.

Detective Brannigan testified about his investigative role in the crimes. Specifically, Brannigan recounted how he had travelled the chase route from Bell Hall's social club to the scene of the shooting in about four to five minutes. Defense counsel objected to the testimony on the ground that Detective Brannigan's knowledge of the chase route incorporated hearsay statements from Dickie Hall and Julien Felder. Hall and Felder appeared at pre-trial pro-

ceedings, but they were not called as witnesses at trial. Defense counsel thus requested a missing witness charge.

A trial judge is entrusted with broad discretion in determining whether a missing witness charge is appropriate. *United States v. Miranda,* 526 F.2d 1319, 1330–31 (2d Cir.1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). The theory behind the missing witness instruction teaches that where "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it create the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). The charge, however, is not warranted where the witness is available to both sides. *See Castro v. Sullivan,* 662 F.Supp. 745, 750 (S.D.N.Y. 1987); *Journet v. Coombe,* 649 F.Supp. 522, 526 (S.D.N.Y.1986); *United States v. Obayagbona,* 627 F.Supp. 329, 344 (E.D.N.Y.1985).

Petitioner does not argue and fails to make any showing that he was unable to call Hall and Felder on his own behalf. Accordingly, the trial judge did not err in refusing to give the jurors a missing witness instruction. Similarly, the Court perceives no constitutional error in the admission of Detective Brannigan's testimony.

### II. THE PROSECUTOR'S SUMMATION

■ The Supreme Court has recently revisited the standards for determining whether a prosecutor's summation deprived a criminal defendant of his right to a fair trial. In *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Court stated that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181, 106 S.Ct. at 2471 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The factors the Court must consider include "the severity of the misconduct;

---

**2.** Petitioner later confessed to the crime, but his    statement was not received in evidence at trial.

the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

Petitioner makes several challenges to the prosecutor's summation, including (1) that the prosecutor inflamed the passions of the jury by making comments about the officer's death occurring in the line of duty and displaying the officer's blood-stained shirt; (2) that the prosecutor vouched for his witnesses by improperly arguing that the testimony was not contradicted; and (3) that the prosecutor gave a false and misleading explanation for the absence of Hall and Felder at trial.

Upon a thorough review of the record, particularly the summations, the Court must conclude that none of these statements deprived petitioner of his right to a fair trial.

The prosecutor's "misconduct," to the extent it can be characterized as such, was not severe. Most, if not all, of the challenged statements were made in response to defense counsel's earlier summation. The "vouching" comments were made by the prosecutor merely to illustrate to the jury that because all of testimony was consistent, it would have to find that each witness lied in order to find a reasonable doubt. It was also in this regard that the prosecutor made the statement that the testimony was uncontroverted. Petitioner's challenge to the prosecutor's comment about the absence of Hall and Felder is spurious. The Court simply cannot conclude that the comments individually, or the summation in its entirety, constitute misconduct. *Compare Darden, supra,* 477 U.S. at 180 n. 12, 106 S.Ct. at 2471 n. 12 (prosecutor's summation included, *inter alia,* his personal wish that someone "blow [the defendant's] head off").

Both the Court and the prosecutor cautioned the jury that they were to consider only the testimony of the witnesses and the exhibits admitted into evidence, *see, e.g.,* Tr. at 1310–11, and that the prosecutor's summation was not evidence. *See, e.g.,* Tr. at 1240, 1258.

Finally, as discussed more fully above, the certainty of the convictions cannot reasonably be doubted. Accordingly, this ground cannot form the basis of the writ that petitioner seeks.

CONCLUSION

The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must be and hereby is denied.

SO ORDERED.