**William AGUANNO, Petitioner,**

v.

**Bert ROSS, Superintendent of Elmira Correctional Facility; Robert Abrams, Attorney General of the State of New York; Elizabeth Holtzman, District Attorney of Kings County, Respondents.**

No. 88 Civ. 4011.

United States District Court,
E.D. New York.

June 7, 1991.

Epstein, Hus & Weil by Lloyd Epstein, New York City, for petitioner.

Charles J. Hynes, Dist. Atty., Kings County by Carol Schwartzkopf, Brooklyn, N.Y., for respondents.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

High on drugs, William Aguanno and a companion attempted a robbery. Their quarry resisted. In a frenzy of stabbings, Aguanno and his prey were repeatedly wounded. A stab to the heart killed the victim. The two criminals fled, Aguanno covered with his own blood mingled with deceased's.

Tried separately on essentially the same evidence, Aguanno was convicted of common-law murder, while his accomplice was found guilty of manslaughter and felony murder. Common-law murder is the most serious of the crimes because it requires an intent to kill. N.Y.Penal Law § 125.25(1). Nevertheless, Aguanno received a sentence of 20 years to life, partly because he was a Vietnam veteran, while the accomplice, because of his prior record, received 25 years to life. The differences in verdicts would normally excite no concern among lawyers since different juries reasonably have disparate views of the same evidence.

Attributing the discrepancy in result to a mistake in the trial judge's supplemental charge, and having exhausted his state

---

remedies, Aguanno seeks a writ of habeas corpus. Since the offense in New York is not capital, the claim can be viewed with aloof dispassion without concern for the law's tendency to twist its processes to avoid possible executions. So examined, the contention is unpersuasive.

After a full and classically correct charge the jury interrupted its deliberations to ask for clarification of the "intent" required for common-law murder. The judge responded by giving an example that Aguanno contends conflated intent and causation. He argues that in essence the jury was informed that if it found that the petitioner directly caused deceased's death in a manner similar to a shot from a gun held to the head, rather than by some intervening cause such as blood poisoning resulting from a relatively superficial wound, it should conclude that petitioner intended to kill the deceased. The effect, he contends, was to take intent out of the case because a wound to the heart caused death. The charge was as follows:

As I indicated to you under the first count, the common law murder count, the statute requires a specific intent to kill and how do you do that. You draw the inferences with respect to intent by the nature of the weapon used, where the blow was struck, the number of blows, what words were spoken, all of the circumstances in connection thereof. For instance, and it has nothing to do with this, but just a stark reminder, if I took a gun and put at a person's head and shot him and killed him the jury could very well draw the inference that the intent was not to seriously injure him but to kill him, because of the nature of the weapon used, the nature of the inferences that I can draw with respect thereto. Since intent is not anything that we can photograph, not anything that we can fingerprint, not anything that we can do, you have to draw inferences with respect thereto.

Whereas, if I took a gun and I shot at your toe and as a result of which poisoning or anything, shock ensued, and death was caused, now there was an intent to seriously and physically injure but not to

cause death, but death was caused as a result thereof. And therefore, the statute is very plain. In connection with common law murder, namely the first count, there must be a specific intent to cause death. The intent, as I said, is to cause death. That is a matter for a jury to determine based upon all of the circumstances.

No objection was taken to the charge. Respondent admits, however, that since the Appellate Division considered the issue, a federal court may consider it on collateral attack. *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir.1990); *Carroll v. Hoke*, 721 F.Supp. 446, 449 (E.D.N.Y.1989).

Aguanno contends that the error in charging on intent was compounded by ambiguities in the charge of "in concert" liability, permitting the accomplice's intent to be attributed to petitioner. Since we find no error in the supplemental charge, there is no need to consider the "in concert" element—which does not, in any event, seem confusing.

While not conclusive, it is suggestive of the absence of any probability that the jury was misled that defense counsel contemporaneously saw no error and entered no objection. Viewed in context of the whole charge, it is highly unlikely that a "reasonable juror" could believe that a finding of intent to kill must follow from a fatal blow during an altercation where a number of nonfatal wounds were inflicted on the deceased. *See, e.g., Francis v. Franklin*, 471 U.S. 307, 316, 324, 105 S.Ct. 1965, 1972, 1976, 85 L.Ed.2d 344 (1985); ("reasonable" juror's understanding of inference as compulsory); *Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977) (shifting of burden of proof respecting one element upon proof of another). Any reasonable jury would have understood that intent to kill was an independent element of the crime of common-law murder that had to be proved beyond a reasonable doubt.

The petition is dismissed. A certificate of probable cause is granted. The court expresses its gratitude for the skillful as-

sistance of court appointed counsel for the petitioner as well as for that of the equally skilled and candid attorney for respondent.

So ordered.