Thomas **BUSIELLO**, Petitioner,

v.

John **MCGINNIS**, Superintendent of the Downstate Correctional Facility, Respondent.

No. CIV.A. 98–403(DRH).

United States District Court, E.D. New York.

Dec. 13, 2002.

George M. Harmel, Central Islip, NY, for petitioner.

Joanne V. Smith, James M. Catterson, Riverhead, NY, for respondent.

### MEMORANDUM AND ORDER

WILLIAM G. YOUNG, District Judge, sitting by designation.[1]

## I. INTRODUCTION

Thomas Busiello ("Busiello") petitions this Court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Busiello asserts that various defects in his trial for first degree assault render his conviction contrary to various provi-

---

1. Of the District of Massachusetts, sitting by designation.

sions of the United States Constitution, and hence void.

## A. Facts

Kristin Juliano ("Kristin") was engaged to Busiello. Pet'r.'s Mem. at 3. On March 23, 1994, Kristin went to her parents' house in Shelter Island. Resp.'s Opp. at 10. While there, she got into an argument with her father, James Juliano, Sr. ("Juliano"). *Id.* The dispute culminated in Juliano's physical assault of his daughter. He hit her, dragged her by her hair, and gave her a bloody nose and lip. *Id.* at 10–11. Kristin subsequently escaped from the house and went to Busiello's parents' house in Sag Harbor. *Id.* at 11–12.

The next morning, Busiello and Kristin drove to Juliano's business, Village Coach Works. Pet'r.'s Mem. at 3. The two waited in their car until Juliano arrived at approximately 8:15 a.m., with his son James Juliano, Jr. ("James") in the car. *Id.* As the father and son got out of the car, Kristin and Busiello began screaming at them and a fight ensued. *Id.* at 3–4. After the fight started, Busiello took a baseball bat from his car and struck Juliano with it, breaking his legs. *Id.*

Busiello was subsequently indicted on two counts of first degree assault. The central issue at trial was whether Busiello was engaged in self-defense when he struck Juliano, as he so testified. Knowing this, Busiello came prepared to offer several witnesses who would testify to Juliano's violent and unpredictable disposition. Pet'r.'s Rep. Mem. at 13–17. More importantly, when called as a prosecution witness, Juliano himself[2] testified that he had initiated the fight and that Busiello only took up the baseball bat against him in response. Pet'r.'s Mem. at 5. Juliano also

testified that his earlier grand jury testimony—in which he stated that Busiello was the aggressor—was erroneous, as were his sworn statements given to the police regarding the incident. *Id.* at 6. The prosecution used those prior inconsistent statements to impeach Juliano on the stand. *Id.* In addition, the prosecution presented the testimony of William Condon ("Condon"), an employee of Juliano who had witnessed the entire altercation and had summoned the police. *Id.* at 4. Condon testified that Busiello, not Juliano, had started the fight. *Id.* The jury subsequently found Busiello guilty of assault in the first degree. *Id.* at 10.

## B. Appeals and Collateral Attack

Busiello was sentenced to an indeterminate prison term of one and one-half years to four and one-half years. *Id.* at 2. This sentence, however, was stayed pending Busiello's appeal. *Id.* Busiello's appeal was denied, *People v. Busiello*, 234 A.D.2d 557, 651 N.Y.S.2d 909 (2nd Dep't.1996), and on May 20, 1997, the Court of Appeals denied his subsequent application for review, 89 N.Y.2d 1089, 660 N.Y.S.2d 383, 682 N.E.2d 984 (1997).

Busiello commenced his sentence in June, 1997. Pet'r.'s Mem. at 2. He subsequently moved the County Court, pursuant to New York Criminal Procedure Law § 440, to vacate the judgment entered against him and to reconsider a prior argument that the indictment ought be dismissed in the best interests of justice. Resp.'s Opp. at 16. This motion was denied in its entirety on November 17, 1997. *Id.* Busiello then applied to the Appellate Division for permission to appeal, which was denied on January 14, 1998. *Id.* Bu-

---

**2.** At the time of trial, Busiello and Kristin had married; thus, Juliano was now his father-in- law. Resp.'s Opp. at 3 n. 3.

siello at once brought this petition for habeas corpus on January 23, 1998.[3]

In his petition, Busiello asserts nine defects in his trial which constitute constitutional violations. He argues that several actions of the trial judge, both individually and collectively, denied him the right to a fair trial. First, Busiello argues that it was constitutional error to permit the prosecutor to impeach its own witness—Juliano—with his prior statements identifying Busiello as the attacker, given that the prosecutor already knew before calling Juliano that he had recanted those statements. Pet'r.'s Mem. at 20. Second, Busiello asserts that the trial court erred by expressing opinions as to the veracity of Juliano's trial testimony when it (1) advised Juliano to retain an attorney if he intended to testify in a manner contrary to his grand jury testimony and (2) subsequently admonished Juliano, within the jury's hearing, that "I think you are deliberately trying to sabotage this process." *Id.* at 25–26. Third, he argues that the prosecutor, in impeaching Juliano with his prior testimony, went beyond the bound of propriety by asking questions implying that Juliano had contacted the chief prosecution witness, William Condon, seeking to persuade him not to testify or to testify falsely. *Id.* at 29–30. Fourth, Busiello argues that the trial court improperly prevented him from presenting evidence of Juliano's prior specific acts of violence, which would have bolstered his self-defense case. *Id.* at 28. Fifth, Busiello argues that the cumulative effect of these trial rulings was to prevent him from adequately presenting to the jury his defense of self-defense. *Id.* at 30.

Busiello also asserts several arguments that do not flow directly from Juliano's testimony. As his sixth claim, he argues that the trial court lacked jurisdiction over his offense. *Id.* at 31. Seventh, Busiello argues that the prosecutor committed a *Brady* violation by failing to disclose evidence that a third party had witnessed an assault committed by Juliano and Condon against Busiello. *Id.* at 33. Eighth, Busiello argues that the indictment should have been dismissed because it was based in part on perjurious testimony. *Id.* at 39. Ninth, and last, Busiello has moved to amend his petition to include the additional claim that the ineffective assistance of his appellate counsel deprived him of his right to counsel.

## II. DISCUSSION

### A. Impeachment of Juliano

Busiello's first argument is that the trial judge impermissibly permitted the prosecutor to impeach Juliano at trial. As discussed above, Juliano changed his story after testifying to the grand jury. In his grand jury testimony, Juliano stated that he did not provoke Busiello's assault on him. At trial, however, Juliano asserted that he did provoke the assault, thus bolstering Busiello's claim that he acted in self-defense. There is no dispute that the prosecutor knew that Juliano would testify to that effect when he took the stand, although it is disputed how far in advance the prosecutor had that knowledge. (Bu-

**3.** Since Busiello received a maximum four and one half year term, it would appear that, while this petition has been pending, he has served his time and been released. The record is silent on this point. Even if this is the case, however, it is appropriate for the Court to resolve his habeas petition, because he was indeed in custody at the time the petition was filed. *See Scanio v. United States*, 37 F.3d 858, 860 (2d Cir.1994) ("[T]he habeas corpus statute confers jurisdiction to district courts to entertain habeas petitions for relief solely from persons who satisfy the status or condition of being 'in custody' at the time the petition is filed").

siello contends that the prosecutor knew four days in advance, Pet'r.'s Mem. at 25; the respondent contends that the prosecutor only found out on the day of trial, Resp.'s Opp. at 36.) Busiello contends that his constitutional rights were violated when the prosecutor, knowing that Juliano would no longer testify that Busiello was the aggressor, called Juliano anyway and then impeached him with his prior statements. His argument fails for two reasons.

■ First, Busiello has failed to exhaust this claim in state court. Section 2254 establishes as a jurisdictional requisite to federal habeas review that "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). As the Second Circuit explained in *Daye v. Att'y Gen. of State of N.Y.*, "the exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim." 696 F.2d 186, 191 (2d Cir.1982). Thus, a petitioner is not considered to have satisfied the exhaustion requirement unless his federal claim has been "fairly presented" to the state courts. *Id.*

■ To meet this requirement, a petitioner must have informed the state court of both the factual and legal basis of his federal claim. *Id.* at 191–92. Accordingly, he first must have set forth before the state courts essentially the same facts as pled in the federal petition. *Id.* at 191. Busiello is not alleged to have failed to comply with this requirement. The petitioner must also have placed before the state court essentially the same legal theory he asserts in his federal petition. *Id.* at

192. It is on this front that Busiello has failed to exhaust his complaint.

There are a number of ways in which a petitioner may satisfy the "fairly presented" requirement with respect to the legal basis of his federal claim. *Daye* explains:

[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194.

The Respondent asserts that Busiello failed to accomplish any of these in regard to this claim, because he has previously only couched his impeachment argument in state law terms. Resp.'s Mem. at 21–22.[4] This Court concurs. A review of Busiello's appellate brief makes clear that he appealed solely on the technicalities associated with the New York evidentiary rule, rather than on any federal constitutional grounds. *See* Busiello's Appellate Brief at 10–16, App. 95–04188 (2d Dept. 1995). In fact, even in his federal petition, Busiello focused on the requirements of N.Y. Criminal Procedure Law § 60.35(1) that relate to impeachment, rather than on federal law. Pet'r.'s Mem. at 22–25. Accordingly, Busiello has failed to exhaust this claim.

Moreover, even had Busiello exhausted this claim, it would fail on the merits.[5]

---

4. The Respondent incorrectly characterizes this failure as resulting in a procedural de-

fault, rather than in a failure to exhaust. Resp.'s Mem. at 21.

5. For the purposes of this petition, the Court

Busiello's emphasis on state law rather than federal law is not surprising: as he correctly notes in his brief, Pet'r.'s Mem. at 22, the Federal Rules of Evidence are far less strict with respect to impeachment than are New York's. *Compare* N.Y.Crim. Proc. L. § 60.35(1), (setting forth limited circumstances wherein a party may impeach its own witness), *with* Fed.R.Evid. 607 (permitting any party to impeach any witness—including its own— for any reason). *See, e.g., United States v. Rosa,* 11 F.3d 315, 336–337 (2d Cir.1993) (holding that under Fed.R.Evid. 607, party may impeach its own witness at any time for any reason). It is true that under federal law, the government (or indeed any party) "may not call a witness whose testimony it knows to be adverse for the *sole purpose* of impeaching him and thereby presenting evidence to the jury that would not otherwise be admissible." *United States v. Eisen,* 974 F.2d 246, 262 (2d Cir.1992) (emphasis added). When, however, the witness in question has testimony to offer that is instrumental to the government's case, the government is permitted both to question him and to impeach him about "those aspects of his testimony that conflict with the [g]overnment's account of the same events." *Id.* at 262–263.

█ This is precisely what happened here. The record belies Busiello's claim that the prosecutor called Juliano in bad faith, solely for the illicit purpose of introducing his prior (otherwise inadmissible) statements that Busiello had been the aggressor. To be sure, the prosecutor had some notice that Juliano was going to depart from his prior statements by testifying at trial that he, not Busiello, started the fight. Nonetheless, it cannot be said that the prosecution called Juliano solely as a means of getting those prior statements into evidence. Even though Juliano had changed his story with respect to who was the initial aggressor, he legitimately remained an important source of information about the injuries he suffered and the cause of those injuries. As such, his testimony was instrumental to the prosecution's case, and the prosecution was entitled to call him as a witness, at which point it was free to elicit testimony material to its case and to impeach those aspects of Juliano's testimony that harmed its case. Accordingly, the Court must deny Busiello's petition with respect to this claim.

## B. Trial Judge's Advice to Juliano Regarding Representation

Next, Busiello argues that the trial judge committed constitutional error by injecting his thoughts into the procedure. First, the judge advised Juliano, in the presence of the jury, that Juliano ought retain counsel if he intended to testify contrary to his grand jury testimony. Busiello asserts that in making this statement, the judge implied that if Juliano were to change his account, he would be lying and hence susceptible to a charge of perjury. Second, and more significantly, Busiello alleges that the trial judge stated, in front of the jury, that he thought Juliano was "trying to sabotage this process," thereby explicitly conveying to the jury his analysis of the witness's veracity.

█ As to the first comment, cautionary advice to witnesses who are about to expose themselves to potential liability is en-

---

assumes *arguendo* that the bad faith impeachment of a witness does in fact qualify as a constitutional error upon which a habeas claim can be based, insofar as it implicates the right to a fair trial. The Fourth Circuit, however, has reached a contrary conclusion.

*See United States v. Ince,* 21 F.3d 576, 582 (4th Cir.1994) (stating that a claim of bad faith impeachment of a witness did not have a "constitutional dimension," but was simply an evidentiary question).

tirely appropriate. In this case, the jury surely recognized (as soon as the impeachment began) that Juliano was testifying contrary to his previous testimony. Thus, the jury likely also recognized, even apart from the judge's statement, that Juliano might get in "trouble with the law" because one or the other of his testimonies was inaccurate. The judge's statement expressed no opinion about which of those testimonies was inaccurate.

■ Similarly, the trial judge's second comment regarding Juliano's attempt to sabotage the proceedings was not constitutional error. The judge made this comment after Juliano repeatedly provided unresponsive answers and deliberately disclosed unsolicited information. Resp.'s Opp. at 38. In such circumstances, a caution from the trial court is appropriate. Here, the trial judge stated, "I think you are deliberately trying to sabotage this process. Telling you now you wind up doing that, you'll get in trouble with me. I'll hold you in contempt in two seconds, in case you don't know." *Id.*

Busiello appears to concede that Juliano was non-responsive, but argues that Juliano's non-responsiveness was itself a response to the prosecution's overzealous impeachment of him. Pet'r.'s Rep. Mem. at 12. As discussed above, the impeachment was proper. As is discussed *infra,* there was no improper overzealousness. Juliano's non-responsiveness was thus unjustified.

The trial court's attempts to stifle such non-responsiveness were, accordingly, entirely appropriate. A trial judge has an absolute, non-delegable obligation to ensure that order is maintained in the courtroom. If the trial judge felt that an order regarding the conduct of the trial was necessary, he is not to be hamstrung in his attempt to insure decorum by far fetched conjecture. Trial judges are not potted plants. Nor are they simple referees or umpires. The trial judge is necessarily the even-handed, dominant mind in the courtroom insuring, in everything he says and does, indeed in every gesture, the sense of justice that is the abiding goal of American society. Simply put, American trial judges are the nation's foremost practical law teachers—it is their vigor, their intellectual rigor, their devotion to the profession of judging that gives life and form and substance to the greatest expression of direct democracy known to our society today—the American jury.

Had counsel seriously feared some adverse impact on the jury, it could have requested curative instructions. Counsel's failure to do so gives rise to a further flaw in Busiello's argument: procedural default.

■■ Arguments are procedurally defaulted when a state court denies an argument because a petitioner has failed to comply with a valid, neutrally applied state rule of procedure. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Respondent asserts that because no contemporaneous objection to the judge's comments was made at the time of trial, Busiello was procedurally barred from raising this claim on appeal. The Second Department, in denying Busiello's appeal, discussed only Busiello's contention that the prosecution was improperly permitted to impeach Juliano. In regard to all of Busiello's other claims, the court stated that "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit." *People v. Busiello,* 234 A.D.2d at 557, 651 N.Y.S.2d 909.

Were it disputed whether Busiello had preserved for appellate review his argument about the trial court's comments, the Court would need to consider whether the appellate court provided a clear or unam-

biguous basis upon which this Court could conclude that it denied this claim for procedural default. *See, e.g., Carroll v. Hoke,* 721 F.Supp. 446, 449 (E.D.N.Y.1989). Here, however, it is undisputed that no contemporaneous objection was made. Thus, it is clear that Busiello did not preserve this argument for appellate review, and that it was denied on the basis of procedural default. Accordingly, both because these arguments are procedurally defaulted and because (as noted above) they are substantively meritless, the Court denies Busiello's petition with respect to his arguments relating to the trial judge's comments.

## C. Specific Acts Testimony

Busiello next argues that he was impermissibly denied the opportunity to present a defense of self-defense because the trial judge (1) impermissibly prevented him from inquiring into specific prior acts of violence that Juliano had committed towards Busiello (which Busiello intended to establish through third party testimony) and (2) issued an erroneous jury instruction concerning self-defense. Of all Busiello's claims, this is the most troubling.

■ In essence, Busiello sought to call several witnesses who would testify to various past violent incidents initiated by Juliano against Busiello. In the context of presenting a self-defense case, the importance of such testimony is clear. The trial judge, however, elected not to permit Busiello to call these witnesses, ruling that the testimony was duplicative because Juliano, in his testimony, had admitted the prior incidents. Pet'r.'s Rep. Mem. at 16–18. The problem, of course, is that the prosecution had spent a great deal of time discrediting Juliano's testimony, suggesting he had fabricated his testimony in an attempt to aid his son-in-law. Thus, argues Busiello, the prosecutor also implied that Juliano had also fabricated his testi-

mony that he had previously committed acts of violence against Busiello. *Id.* at 19. In such a context, the decision of the trial judge not to permit Busiello to call his witnesses is of significant moment.

Busiello's attorney, however, did not raise these points on appeal. Busiello's App. Brief at 10–18. Having failed to raise this claim before the appropriate state tribunal, Busiello has not exhausted the state remedies and therefore section 2254 is incapable of redressing his grievances. Busiello has directed this Court to dismiss any claim deemed unexhausted and to consider the remaining claims. *See* Pet'r's Mem. at 21 n. 6.

■ Even had Busiello exhausted this claim, the Court would have to deny it on grounds of procedural default. Pursuant to New York law, Busiello was required to raise this argument in his initial appeal. *See* New York Crim. Proc. L. § 440.10 (limiting scope of post appeal motions). Busiello makes no argument that he has not procedurally defaulted this claim, instead arguing that the Court ought ignore his default. Pet'r's Reply Mem. at 6–9. The Court declines to do so. The longstanding requirement of demonstrating both cause and prejudice to excuse a procedural default is well known. *Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Busiello has failed to demonstrate either cause or prejudice. This Court steadfastly declines to excuse procedural default absent a showing of both cause and prejudice. Accordingly, the Court dismisses the claim as procedurally defaulted and notes that, even were the claim not defaulted, the Court would dismiss the claim as unexhausted.

## D. Improper Impeachment—Questioning Regarding an Uncharged Crime

Busiello next argues that impermissible constitutional error occurred when the tri-

al judge permitted the prosecutor to question Juliano regarding other uncharged crimes that he had allegedly committed. Specifically, Busiello alleges that the prosecutor "insinuated that he [Juliano] was guilty of the crime of Tampering with a Witness in the Fourth Degree." Pet'r's Mem. at 29. The prosecutor "posed a series of questions clearly designed, and amounted to, a suggestion to the jury that Juliano contacted Condon [the prosecution's chief witness] in an effort to dissuade him from appearing at the trial or, if he did so, to proffer false testimony." *Id.* at 29–30.

Like Busiello's previous claim, this claim is unexhausted, and, were it not unexhausted, would be procedurally defaulted. The claim is unexhausted because Busiello failed to present fairly the legal basis of this federal claim to the New York state courts. Although Busiello did appeal his conviction on these grounds, he did so only with respect to the state law aspects of this claim. An examination of Busiello's memorandum in support of his appeal indicates that Busiello's sole contention with respect to this form of impeachment was that the prosecution had *no good faith* basis on which to make the inquiry. Busiello's App. Brief at 17. The only case law cited by Busiello was *People v. De Pasquale*, 54 N.Y.2d 693, 442 N.Y.S.2d 973, 426 N.E.2d 467 (1981), which provides no federal constitutional analysis. Accordingly, Busiello failed to "fairly present" the legal basis of this federal claim to the state court, and it is thus unexhausted. *See Daye*, 696 F.2d at 191.

Even had Busiello exhausted this claim, it would fail on grounds of procedural default. Busiello failed to make a contemporaneous objection to the prosecutor's

questioning of Juliano in regard to his contact with Condon at the time of trial. Resp.'s Mem. at 23. Accordingly, the Court assumes that the Second Department dismissed this claim because it was unpreserved for appellate review. Because Busiello cannot overcome this procedural default with a showing of cause and prejudice, as is required, this claim must be denied.

Moreover, the Court notes that even were this claim exhausted and not procedurally defaulted, it would fail on the merits. It is simply not a violation of any federal constitutional principle for the judge to have permitted the prosecutor to impeach Juliano with questions about Juliano's specific prior acts, as long as the prosecutor had a good faith basis for so inquiring.[6] The combination of Juliano's own change of story, and his affirmative answer to the prosecutor's question about whether he had contacted Condon, indicates that the prosecution did, in fact, have a good faith basis for the inquiry. Resp.'s Mem. at 44–46. The Court also notes that after the prosecution questioned and impeached Juliano, Busiello had the opportunity to question and rehabilitate him.

Because this claim is unexhausted, procedurally defaulted, and substantively meritless, the Court, denies Busiello's petition with respect to this claim.

### E. Inability to Present the Self–Defense Argument

Busiello also argues that, irrespective of the effect of the individual rulings, when viewed collectively an even greater harm is revealed. Busiello characterizes the cumulative effect of these rulings as denying his ability to mount a defense

---

6. This is not to imply that a good faith basis is a constitutional requisite; on that, the Court expresses no opinion. It is clear, however, that if a good faith basis *is* present, the inquiry is constitutional beyond peradventure.

allowed by law—that of self-defense. This argument has not been advanced before the state courts. Busiello App. Brief at 10–18. Accordingly, it is unexhausted. It is also substantively meritless. The jury was presented with testimony regarding the prior assaults committed by Juliano against Busiello, the events leading up to this assault, and the events of the assault. In other words, Busiello was permitted to advance his self defense theory of the case. The jury, unfortunately for Busiello, weighed the conflicting evidence and believed that Busiello was guilty. As the trial court's rulings did not unconstitutionally infringe Busiello's rights, this claim is rejected on its merits, though were it not this Court would be obligated to dismiss it on grounds of non-exhaustion.

### F. Lack of Jurisdiction

In his Article 440 motion, Busiello asserted two arguments as to why the Suffolk County Court lacked jurisdiction to try him. *See* Mem. and Order of Nov. 17, 1997 (Weber, J., of Suffolk Cty Ct.). First, Busiello asserted that the charge constituted a family offense and thus was within the exclusive jurisdiction of the Suffolk County Family Court. *Id.* Second, he argued that an independent agreement between Juliano, Kristin, and Busiello stipulated that, in return for Kristin's agreement to drop family court charges against Juliano, Juliano would withdraw his criminal complaint against Busiello. *Id.; see also* Mem. and Order of Mar. 14, 1995 (Weber, J., of Suffolk Cty. Ct.).

■ In his habeas petition, Busiello reasserts the argument that the settlement agreement between Juliano, Kristin, and Busiello deprived the County Court of jurisdiction. As a purely practical matter, this Court fails to understand how prosecutorial decisions can be vested (at least absolutely) in private individuals.

In his well reasoned order denying Busiello's trial motion to dismiss in the interests of justice, the judge discussed at length the relevant New York statutory law regarding when a withdrawal of a criminal complaint ought result in the prosecutor dropping the criminal charges against the accused. Mem. of Mar. 14, 1995 (Weber, J., Suffolk Cty. Ct.) This Court defers to that court's expertise in matters of New York law.

■ This highlights the fatal flaw in Busiello's argument—this issue is solely a matter of state law. As such, Busiello cannot point to a federal right denied him. To be sure, Busiello argues that the prosecution was in violation of the constitutional directive that individuals are to be tried in the district in which the crime was allegedly committed. Pet'r.'s Mem. at 31. Busiello asserts that, because this matter appropriately belonged in the Family Court, the County Court tried him without jurisdiction.

■ This claim has not been heretofore raised (in the form of a federal constitutional claim), is completely outside the norm of constitutional litigation, and thus is unexhausted. Further, this claim has likely been procedurally defaulted as a result of Busiello's failure to raise it earlier. Moreover, at a substantive level, the reason the claim is outside the norm of constitutional litigation is because the claim simply misconstrues the nature of the constitutional limitation. The constitutional limitation to which Busiello refers is that of the Sixth Amendment, which mandates that trials shall be held in the state and district in which the crime was committed. U.S. Const. amend. VI. The constitutional district limitation is a geographic limitation. Busiello's argument confuses this geographic limitation with subject matter jurisdictional limitations imposed by a sovereign on various courts.

Thus, regardless which court in Suffolk County prosecuted Busiello, that court's location—Suffolk County—would comport with the constitutional limitations.[7] As there is no violation of federal law, there is no basis on which to grant the petition with respect to this claim.

### G. *Brady* Violation

Busiello next argues that the prosecutor failed to turn over evidence favorable to the defense, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, the police were aware of a statement by Eric Dafgard ("Dafgard") that Dafgard had witnessed an assault committed against Busiello by Juliano and Condon. Pet'r.'s Mem. at 33. This assault took place prior to the fight that resulted in Busiello's conviction, in a different police department's area of responsibility. *Id.* at 35; *see also* Mem. and Order of Nov. 17, 1997, n. 1 (Weber, J., of Suffolk Cty Ct.). Absent this information, so Busiello argues, his ability to cross-examine Condon was impaired.

■■■ In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. The Second Circuit has explained that *Brady* is inapplicable "if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Zackson,* 6 F.3d 911, 918 (2d Cir.1993) (internal citations omitted). It would seem reasonable to assume that Busiello—as the victim of this assault by Juliano and Con-

don—knew the factual substance of Dafgard's statement about the assault, and could have cross-examined Condon with this information. Busiello, however, claims that he never knew Condon had been involved in a prior assault on him.

Even if Busiello did not know, and could not have known, the substance of the suppressed information, a *Brady* violation did not necessarily occur. Two additional prerequisites are necessary to establish a Brady violation: (1) the withheld information must qualify as *Brady* evidence; and (2) that evidence must, in turn, have been material to the proceeding. Although Busiello's claim satisfies the first prerequisite, it does not satisfy the second.

■■■ To qualify as *Brady* evidence, the material in question must either be exculpatory or impeach the credibility of a key government witness. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Thus, the fact, if it is a fact, that Condon—the key witness for the prosecution—may have had a personal animus towards Busiello is indeed impeachment evidence within the scope of *Brady.* Still, there is no *Brady* violation if that information was not material. *United States v. Bagley,* 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375.

The crucial question, therefore, is whether this information would have led to a different result in Busiello's trial. In *Cantone v. Superintendent N.Y. Corr. Facility at Green Haven,* 759 F.2d 207 (2d Cir.1985), the Second Circuit examined a

---

7. The Court expresses no opinion whether the Sixth Amendment limitation on prosecutorial geographic jurisdiction also applies to state prosecutions.

similar case. There, the police were in possession of impeachment information relating to a cooperating conspirator who was the key witness: namely, statements that the witness had threatened to kill various parties who were responsible for his arrest. *Id.* at 211. The Second Circuit held that the information was not material, because the defense had nevertheless brought the witness's credibility into question during both cross-examination and summation, such that the witness's prior criminal activities, plea agreement and sentence, enticement to cooperate, and history of dishonesty were all disclosed to the jury. *Id.* at 216. The court also gave weight to the fact that there were other testifying witnesses who corroborated the witness's testimony, and emphasized that the suppressed information was not the type to which the jury would accord great weight. *Id.* at 216–17.

Similarly, in *United States v. Wong,* 78 F.3d 73 (2d Cir.1996), the defendant moved for a new trial on the basis of post-conviction disclosures that the government had not revealed information that would have exposed a witness's bias, interest, and dishonesty. *Id.* at 79. The Second Circuit again concluded that the suppressed information did not warrant a new trial. It stated that impeachment evidence is material for *Brady* purposes if the impeached witness "supplied the only evidence linking the defendant(s) to the crime," or if "the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." *Id.* (internal citations omitted). On the other hand, "new impeachment evidence is *not* material, and thus a new trial is *not* required 'when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'" *Id.* (citing *United States v. Payne,* 63 F.3d 1200, 1210 (2d Cir.1995)).

Guided by the Second Circuit's teaching in these cases, this Court concludes that the impeachment evidence in the present case was not material. Condon did not provide the only evidence against Busiello. His criminal history was disclosed to the jury. His credibility was attacked at trial. In light of these factors, it seems clear that the impeachment value of the suppressed information was minimal—cumulative at best. Accordingly, this information was not material, and therefore its suppression did not violate *Brady.*

The Court thus denies the petition with respect to these claims.

### H. Perjurious Testimony as the Basis of Conviction

Busiello next argues that the indictment on which he was tried was based—knowingly on the part of the government—on perjured testimony. When the government knowingly prosecutes an individual in such circumstances, Busiello argues that this constitutes a denial of due process. He states that "because the record is devoid of any indication upon the part of William Condon that he had not only witnessed but was a part of an assault against the petitioner, this was tantamount to perjury." Pet'r's Mem. at 36. In other words, Busiello argues that because Condon did not disclose to the grand jury that he had previously assaulted Busiello, his testimony constituted perjury. He further suggests because the police knew, or had reason to know, of Condon's prior assault against him, the government was aware that Condon had "perjured" himself and nevertheless relied upon Condon's testimony as part of the basis of the indictment against Busiello. *Id.* at 39.

Condon's failure to disclose his prior assault against Busiello, however, simply does not qualify as perjury. Con-

don never disclaimed any prior assault against Busiello in his testimony. Accordingly, Busiello's argument must fail. Moreover, the Court notes that this information was not substantively relevant to the present case, which regarded only the March 24th altercation between Busiello and Juliano.

## I. Ineffective Assistance of Counsel

After filing this petition, Busiello concluded that his appellate counsel had provided him with ineffective assistance of counsel. Accordingly, he filed a petition seeking a writ of error *coram nobis* from the trial court. This petition was denied by the Appellate Division, Second Judicial Department, of the Supreme Court of the State of New York. *People v. Busiello*, 251 A.D.2d 593, 673 N.Y.S.2d 1023(Mem) (2d Dep't 1998). Accordingly, Busiello now moves, pursuant to Federal Rule of Civil Procedure 15, to amend his petition to include this claim.

Busiello claims that his appellate counsel was ineffective because he failed to raise two particularly strong arguments—(1) that the trial court's improper refusal to permit Busiello to call witnesses to attest to Juliano's prior assaults prevented Busiello from mounting his defense that he had acted in self-defense; and (2) that the evidence adduced during the course of the trial was insufficient to establish his guilt beyond a reasonable doubt. *See* Affirmation of George M. Harmel in support of Busiello's motion to amend his habeas corpus petition [Docket No. 24]. To make out such a claim of ineffective assistance, a petitioner must show two things. First, he must show that counsel's performance was deficient—so deficient that counsel did not function as the Sixth Amendment intended. Second, he must show that the ineffective assistance prejudiced the defense— that it deprived the defendant of a fair

trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ As the Supreme Court noted in *Jones v. Barnes*, effective practitioners have always elected not to advance certain claims in order to focus on others that are stronger. 463 U.S. 745, 751–754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Accordingly, the mere failure to raise a potentially valid argument on appeal does not constitute a violation of the constitutional right to counsel. *Id.* The Second Circuit's touchstone case addressing this issue is *Mayo v. Henderson*, 13 F.3d 528 (2d Cir.1994). *Mayo* teaches that the failure to raise a "particularly strong" claim on direct appeal, while raising other claims that are weaker, may constitute ineffective assistance of appellate counsel. *Id.* at 533. To constitute ineffective assistance of counsel, the omitted issue must be "significant and obvious" and the pursued issues must be "clearly and significantly weaker." *Id.*

■ Thus, the Court must examine the strength of the claims that Busiello's counsel failed to raise. The Court begins with the omitted claim that it was error to exclude the three witnesses who were going to verify that Juliano had previously assaulted Busiello. Had Busiello raised this claim on direct appeal, it would have been analyzed under the harmless error standard. *See, e.g., People v. Ayala*, 118 A.D.2d 790, 500 N.Y.S.2d 298 (2d Dept. 1986). Accordingly, to prevail, Busiello would have needed to show that the erroneous exclusion of his witnesses actually prejudiced his defense. Thus, Busiello would have been required to demonstrate that (1) the ruling was erroneous; and (2) he suffered actual prejudice because of the ruling.

Given this high burden, this would have been a difficult claim upon which to prevail. In the Court's view, the decision of

whether to admit this witness testimony was a close evidentiary call. Juliano had previously testified that, indeed, he had assaulted Busiello in precisely the manner the three witnesses would have testified. On the one hand, Juliano's testimony was impeached, such that there is a plausible argument that the jury was unwilling to attach credibility to *any* of his testimony. On the other hand, Juliano was impeached only with respect to his account of the events relating to the assault for which Busiello was on trial, not with respect to his testimony about his prior assaults against Busiello. Accordingly, it is unclear that the occurrence of Juliano's prior assaults against Busiello was truly in dispute.

To be sure, this was a close evidentiary call, and the prudent course of action for the trial judge would have been to permit the witness to testify. Even assuming, however, that the trial judge did err in excluding the witnesses to those prior assaults, Busiello would not have been able to show that he suffered actual prejudice because of that error. This is because the relevance of the excluded testimony is entirely unclear. Busiello suggests that the additional evidence of his prior assaults at Juliano's hands might have permitted the jury to conclude that, on the date of the assault in question, Busiello was in fear for his life and acted to protect himself. The context of the case, however, indicates that Busiello was actually arguing that Juliano was the aggressor on the date of the assault in question, not that Busiello was a "battered person" who was justified in attacking Juliano preemptively. The testimony of the three excluded witnesses would have done nothing to establish who was the aggressor during the assault in question. Indeed, such testimony appears to be, in some respects, irrelevant. More importantly here, the testimony's absence was likely harmless to Busiello's case.

As such, this is not a "slam dunk" argument that would have necessitated reversal, and the omission of this argument cannot constitute ineffective assistance of counsel. The other claim that Busiello asserts his counsel should have raised—a challenge regarding whether there was evidence sufficient to find him guilty beyond a reasonable doubt—would have been even less likely to succeed on direct appeal.

Because Busiello's claim of ineffective assistance cannot succeed on its merits, his motion to amend the petition for habeas corpus to add this claim is denied.

## III. CONCLUSION

The state courts have addressed and rejected the vast majority of Busiello's claims. In the post-AEDPA habeas world, such decisions are given great weight. In fact, such decisions are only overturned if they are contrary to, or unreasonable applications of, established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). The impact of this is significant. To prevail, Busiello would need to show not only that a decision was questionable, and in this Court's opinion wrong, but that the state court's rulings were unreasonable. This is a huge burden. Here, even apart from this increased burden, Busiello's claims fail on their merits. In truth, Busiello received a fair trial. The jury heard the evidence, determined that Busiello had broken the leg of his father-in-law, that no mitigating circumstances existed, and convicted him.

Accordingly, Petitioner's motion to amend his habeas petition [Docket No. 24], and his petition for writ of habeas corpus [Docket No. 1] are DENIED.

SO ORDERED.